UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN HASTINGS, Individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>     v.<br><br>NIFTY GATEWAY, LLC and THE GEMINI TRUST COMPANY, LLC,<br><br>                     Defendants. | No. 1:22-cv-10517 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Date: March 8, 2023

Sean Haran
Peter A. Devlin
**WALDEN MACHT & HARAN LLP**
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
sharan@wmhlaw.com
pdevlin@wmhlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

     A.     The Nifty Gateway Registration Process ..................................................................2

     B.     The Arbitration Agreement ......................................................................................3

ARGUMENT .................................................................................................................................4

I.     The FAA Governs the Parties' Agreement and this Dispute. ...............................................5

II.     Plaintiff Entered an Arbitration Agreement with Nifty Gateway. .........................................5

III.     Pursuant to the Arbitration Agreement, the Arbitrator Should Decide Any Questions of Arbitrability. ..................................................................................................9

IV.     If the Court Decides to Reach Questions of Arbitrability, this Dispute Falls Within the Scope of the Arbitration Agreement. ................................................................10

V.     The Arbitration Agreement Is Valid and Enforceable. ........................................................12

VI.     This Action Should Be Stayed Pending Arbitration of Plaintiff's Claims. ........................15

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995) ........................................................................................................ 5

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ...................................................................................................... 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) ...................................................................................................... 11

*Bar-Ayal v. Time Warner Cable Inc.*,
 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ..................................................... 6, 10, 13

*Burstein v. AutoLotto, Inc.*,
 2022 WL 1229291 (W.D. Tex. Apr. 26, 2022) ....................................................... 12, 13

*Camilo v. Lyft, Inc.*,
 384 F. Supp. 3d 435 (S.D.N.Y. 2019) ............................................................................ 5

*Chen-Oster v. Goldman, Sachs & Co.*,
 449 F. Supp. 3d 216 (S.D.N.Y. Mar. 26, 2020) ........................................................... 13

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
 58 F.3d 16 (2d Cir. 1995) ............................................................................................. 11

*CompuCredit Corp. v. Greenwood*,
 565 U.S. 95 (2012) ........................................................................................................ 11

*Contec Corp. v. Remote Sol., Co.*,
 398 F.3d 205 (2d Cir. 2005) ......................................................................................... 11

*Dill v. JPMorgan Chase Bank, N.A.*,
 2020 WL 4345755 (S.D.N.Y. July 29, 2020) ............................................................... 13

*DiNatale v. Shearson Lehman Hutton, Inc.*,
 1990 WL 16171 (S.D.N.Y. Feb. 15, 1990) ................................................................... 12

*Epic Sys. Corp. v. Lewis*,
 138 S. Ct. 1612 (2018) .................................................................................................. 14

*Feld v. Postmates, Inc.*,
 442 F. Supp. 3d 825 (S.D.N.Y. 2020) .................................................................. 7, 8, 9

*Fteja v. Facebook, Inc.*,
    841 F.Supp.2d 829 (S.D.N.Y. 2012) ............................................................................... 9

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    68 F. Supp. 3d 530 (S.D.N.Y. 2014) ............................................................................. 12

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................................................ 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ............................................................................................... 9, 10

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) ............................................................................ 13

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ......................................................................................... 12

*Khanna v. Am. Express Co.*,
    2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .............................................................. 13

*Kumaran v. Vision Fin. Mkts., LLC*,
    2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022) ............................................................... 12

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ................................................................................................. 12

*Levitt v. Lipper Holdings, LLC*,
    2006 WL 944450 (S.D.N.Y. Apr. 12, 2006) ................................................................. 13

*Mackris v. O'Reilly*,
    2019 WL 11000205 (S.D.N.Y. Mar. 6, 2019) .............................................................. 10

*Merryman v. J.P. Morgan Chase Bank, N.A.*,
    2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016) .............................................................. 13

*Meyer v. Uber Techs., LLC*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................... 6, 7, 8, 13

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985) ...................................................................................................... 15

*Morales v. Rochdale Vill., Inc.*,
    2018 WL 4522084 (E.D.N.Y. Aug. 1, 2018) ................................................................ 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................... 4, 11, 12

*Nortek Inc. v. ITT LLC*,
    2022 WL 656896 (S.D.N.Y. Mar. 4, 2022) ....................................................................... 10

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*,
    369 F.3d 645 (2d Cir. 2004) ............................................................................................. 11

*Parisi v. Goldman, Sachs & Co.*,
    710 F.3d 483 (2d Cir. 2013) ............................................................................................. 14

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ............................................................................................... 6

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................................ 9, 10

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989) .......................................................................................................... 12

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) ................................................................................................. 6

*Sultan v. Coinbase, Inc.*,
    354 F. Supp. 3d 156 (E.D.N.Y. 2019) ............................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .......................................................................................................... 14

*United States v. Konn*,
    634 F. App'x 818 (2d Cir. 2015) ....................................................................................... 5

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ............................................................................................. 11

*Whitt v. Prosper Funding LLC*,
    2015 WL 4254062 (S.D.N.Y. July 14, 2015) .................................................................... 9

**<u>Statutes</u>**

9 U.S.C. § 2 ................................................................................................................................ 5, 13

9 U.S.C. § 3 ................................................................................................................................... 15

Defendants Nifty Gateway, LLC and The Gemini Trust Company, LLC respectfully request an order compelling arbitration of Plaintiff John Hastings's claims in this matter.

**PRELIMINARY STATEMENT**

This case involves a straightforward arbitration agreement, one that is virtually identical to arbitration agreements that the Second Circuit and district courts in this Circuit routinely uphold. Plaintiff alleges that he used Defendant Nifty Gateway, LLC's online services to purchase digital collectibles offered on Nifty Gateway's site. To make those purchases—the subject of this dispute—he created three user accounts with Nifty Gateway. Each time he created an account, he had clear notice that "[b]y signing up, you agree to the Terms and Conditions." That text was on a basic account sign-up page and placed conspicuously above the button that Plaintiff had to click to create his accounts and manifest assent to the "Terms and Conditions," which were displayed in bright blue, underlined, and hyperlinked text. The terms, which Plaintiff could review by clicking the hyperlink, contain a prominent agreement to arbitrate any and all claims relating to Plaintiff's use of Nifty Gateway's services, including the purchases Plaintiff alleges he made here. Under controlling Second Circuit authority, Plaintiff assented to this arbitration agreement.

Plaintiff is bound by the agreement's terms and must arbitrate "any dispute or claim relating in any way to: [his] access, use, or attempted access or use of the Site; any products sold or distributed through the Site; or any aspect of [his] relationship with Nifty Gateway." More, any questions regarding the arbitrability of his claims must be resolved by the arbitrator, as Plaintiff agreed that the "arbitrator shall have exclusive authority to (1) determine the scope and enforceability of this Arbitration Agreement; and (2) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." The Federal Arbitration Act ("FAA") requires Plaintiff to honor his agreement.

## FACTUAL BACKGROUND

Nifty Gateway hosts an online platform that permits users to buy, sell, and store digital collectible artwork, which it calls "Nifties."[1] Declaration of Alex Nadler ("Nadler Decl.") ¶ 2. Users can access the platform on Nifty Gateway's website: https://www.niftygateway.com/ (the "Site"). Nifty Gateway permits creators and curators of Nifties to release or publish Nifties through so-called "drops." *Id.* ¶ 3. On the date that a Nifty is released or published, *i.e.*, "dropped," the Nifty can be sold directly to users. *Id.* Nifty creators and curators can also use their own digital storefronts, hosted on Nifty Gateway, to "drop" Nifties. *Id.* Platform users can further buy or sell Nifties on Nifty Gateway's secondary marketplace. *Id.*

Plaintiff filed a Complaint against Defendants on December 13, 2022, alleging that he purchased ninety Nifties between February 23, 2021, and April 2, 2021, and that the Nifties were unregistered securities under federal securities law. Compl. ¶¶ 6–7. He asserts three claims: under (i) Sections 5 and 12(a)(1) of the Securities Act of 1933, (ii) Section 349 of the N.Y. General Business Law, and (iii) for unjust enrichment. *Id.* ¶¶ 70, 82, 89. He asserts these claims individually and on behalf of a putative class of purchasers of Nifties. *Id.* ¶ 11.

As described below, to purchase Nifties, Plaintiff was required to create an account with Nifty Gateway. Nadler Decl. ¶¶ 10, 11. By creating an account, Plaintiff agreed to Nifty Gateway's Terms of Use (the "User Agreement"), which includes an arbitration agreement on both the first page of the User Agreement and in a standalone section. *Id.* ¶¶ 7, 8 & Ex. B.

A.  **The Nifty Gateway Registration Process**

Before a user can purchase or sell Nifties, the user must first create a Nifty Gateway account on the Site's sign-up page. *Id.* ¶ 5. Plaintiff created three accounts with Nifty Gateway

---

[1] The Gemini Trust Company, LLC owns and operates Nifty Gateway.

at various times in 2020. *Id.* ¶ 11. Plaintiff also could not have purchased Nifties, as he alleges, Compl. ¶ 7, without having first gone through the account-creation process, Nadler Decl. ¶¶ 5, 10.



The process to create an account, which Plaintiff completed three times, was simple and transparent. On a single page titled "Sign up for Nifty Gateway," the Site presents the required information that a user must provide to create an account with Nifty Gateway: email address, username, name, and password. *Id.* ¶¶ 6, 7 & Ex. A. Just below these forms—and directly above the "Sign Up" button that completes the account-creation process when clicked— there is a blue and underlined hyperlink to the "Terms and Conditions," with text notifying the user that: "By signing up, you agree to the Term and Conditions and Privacy Policy." By clicking the hyperlinked "Terms and Conditions," the user is taken to a new page setting forth the terms and conditions of the User Agreement, including an agreement to arbitrate any and all disputes. *Id.* ¶ 7.

B.   **The Arbitration Agreement**

The User Agreement contains sections separated by large bold and numbered headings. *Id.* ¶ 9 & Ex. B. A prominent clause of the User Agreement is an agreement to arbitrate all disputes and claims. *Id.* ¶ 8. The first page of the User Agreement, under the heading, "Accepting these Terms," states that "[b]y agreeing to these Terms of Use, you agree to resolve all disputes through

3

binding individual arbitration," and further provides a reference to the section containing the arbitration agreement. *Id.* Ex. B at 1. Farther down, the "Disputes" section of the User Agreement specifically sets forth the "Arbitration Agreement." *Id.* at 8–9. The Arbitration Agreement specifies that: "You agree that any dispute or claim relating in any way to: your access, use, or attempted access or use of the Site; any products sold or distributed through the Site or any aspect of your relationship with Nifty Gateway will be resolved by binding arbitration." *Id.* at 9.

The Arbitration Agreement also states that: "The arbitrator shall have exclusive authority to (1) determine the scope and enforceability of this Arbitration Agreement; and (2) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including but not limited to any claim that all or part of this Arbitration Agreement is void or voidable," among other authority. The Arbitration Agreement finally provides that "by agreeing to this Arbitration Agreement, you and Nifty Gateway are each waiving their right to trial by jury and to participate in a class action or class arbitration," and the "Arbitration Agreement shall survive the termination of your relationship with Nifty Gateway." *Id.*

## ARGUMENT

This dispute belongs in arbitration. Congress's "clear intent" in enacting the Federal Arbitration Act (the "FAA") was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Plaintiff had clear notice and agreed to the User Agreement when he created an account with Nifty Gateway—not once, but three separate and distinct times—which he then allegedly used to purchase Nifties subject to this dispute. Each time Plaintiff agreed to the User Agreement, he agreed to arbitrate "any dispute or claim relating in any way to: [his] access, use, or attempted access or use of the Site; any products sold or distributed through the Site or any aspect of [his] relationship with Nifty Gateway." Nadler Decl. Ex. B at 9. The Arbitration

4

Agreement is nearly indistinguishable from numerous similar agreements that courts in this Circuit, including the Court of Appeals, have enforced. Plaintiff has no sound basis to avoid arbitration, and this Court should require Plaintiff to honor his agreement.

**I.    The FAA Governs the Parties' Agreement and this Dispute.**

The Arbitration Agreement and nature of Plaintiff's claims confirm that the FAA governs. The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995) (FAA should be applied coincident with full reach of Congress's Commerce Clause powers). Both criteria are met here: (i) the Arbitration Agreement is in writing, and (ii) contracts related to the use of an online trading platform for digital collectibles involve interstate commerce, as the Complaint itself alleges. *See* Compl. ¶¶ 17, 76 (alleging conduct affecting "interstate trade and commerce"). Indeed, "there can be no question that the Internet is a channel and instrumentality of interstate commerce." *United States v. Konn*, 634 F. App'x 818, 821 (2d Cir. 2015); *see, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA applies to Lyft's online terms of use agreement that contains arbitration clause).

**II.   Plaintiff Entered an Arbitration Agreement with Nifty Gateway.**

Plaintiff agreed to the User Agreement, including the Arbitration Agreement, because he had adequate notice of the Terms when he created his Nifty Gateway accounts. Plaintiff created three separate Nifty Gateway accounts on three different dates in 2020, assenting to the User Agreement each time. The account-creation process repeatedly gave Plaintiff immediate visible notice of the existence of the User Agreement, stating that: "By signing up, you agree to the Terms and Conditions," where "Terms and Conditions" is in bright blue and underlined text directly above the sign-up button on a simple and uncluttered webpage. This contract formation process

5

is virtually identical to other cases where the Second Circuit and other courts have enforced arbitration agreements presented through online terms and conditions.

Nifty Gateway's contract formation process satisfies New York law. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Settled principles instruct that "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002). When determining whether parties assented to contract terms, "courts eschew the subjective and look to objective manifestations of intent as established by words and deeds." *Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *8 (S.D.N.Y. Oct. 16, 2006) (quotation omitted). "[A]n individual who signs or otherwise assents to a contract without reading it (despite having an opportunity to do so) is bound by that contract, including its arbitration provision." *Id*. Put simply, "inquiry notice" is sufficient to form a contract, even where there is no actual notice. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017).

On the sign-up page here, the user must enter an email, username, name, and a password. Below these form entries, black text states against a white background: "By signing up, you agree to the Terms and Conditions and Privacy Policy." The phrase "Terms and Conditions" is in blue, hyperlinked, and underlined text. By clicking this hyperlink, Plaintiff could review the full text of the User Agreement, including the Arbitration Agreement. This hyperlinked, bright blue text was placed directly above the "Sign Up" button that the user must click to create an account, such that the user must read past the notice before creating his or her account.

The Second Circuit, in *Meyer*, found that a user agreed to the arbitration clause in a terms of service where the terms were hyperlinked just below the "Register" button on an account sign-up page. 868 F.3d at 76, 79–80. The hyperlink to the terms of service in *Meyer*, moreover, was less apparent than the hyperlink here, as it was placed below the button required to register an account, and the registration process spanned multiple screens[2]:



Similarly, in *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020), the district court found an agreement to arbitrate where an arbitration clause was contained in a hyperlinked terms of service. *Id.* at 830–33. As here, the hyperlinked terms of service—with corresponding

---

[2] Attached as Exhibit 1 to the Declaration of Peter Devlin is a true and correct copy of what was submitted as the relevant sign-up page in *Meyer*. Case No. 16-2750, Dkt. 219-1 (Aug. 17, 2017). Although *Meyer* was decided under California law, New York applies "substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 868 F.3d at 74 (quotation omitted).

text notifying the user that, by signing up, "you agree" to the terms—were "spatially" and "temporally" coupled with the sign-up option. *Id.* at 831 (quoting *Meyer*, 868 F.3d at 78). In particular, the hyperlinked terms were below the form entries and above the "sign up" button, as here, and the plaintiff had to click the "sign up" button to create an account, as here. The *Feld* court thus found that the terms of service "were reasonably conspicuous to the prudent Internet user such that [the plaintiff] was on inquiry notice of its terms, and [the plaintiff] manifested assent by signing up for [the defendant's services]." *Id.* at 833. Below is a side-by-side comparison of the sign-up page in *Feld* and the sign-up page here[3]:

 

---

[3] Attached as Exhibit 2 to the Declaration of Peter Devlin is a true and correct copy of what was submitted as the relevant sign-up page in *Feld*. Case No. 19-cv-3899, Dkt. 23 (Aug. 26, 2019).

8

Numerous other courts in this Circuit have also found that users were bound by online terms and conditions in similar circumstances.[4] Accordingly, Plaintiff cannot reasonably dispute that he entered into an agreement to arbitrate any and all disputes with Nifty Gateway.

### III. Pursuant to the Arbitration Agreement, the Arbitrator Should Decide Any Questions of Arbitrability.

The parties here agreed to permit the arbitrator to decide any threshold question of arbitrability. The Court must enforce this agreement. The Supreme Court has repeatedly held that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, *a court may not decide the arbitrability issue*." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (emphasis added). Because "arbitration is a matter of contract," "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Indeed, "[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id.* at 70. Accordingly, a court "may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530.

---

[4] *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837–39 (S.D.N.Y. 2012) (finding agreement where terms were hyperlinked and underlined near text stating that by clicking on the sign-up button, the consumer was agreeing to the terms); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (compelling arbitration where a "conspicuous hyperlink" immediately above a "continue" button provided access to agreement terms, including the arbitration provision, citing an "abundance of persuasive authority" on point); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 159–61 (E.D.N.Y. 2019) (holding that an arbitration agreement was formed under New York law by completing a similar sign up process on a different online cryptocurrency exchange platform).

This Court's decision in *Shron v. LendingClub Corp.*, 2020 WL 3960249 (S.D.N.Y. July 13, 2020), *vacated*, 2020 WL 10223227 (S.D.N.Y. Nov. 30, 2020), is distinguishable from the dispute here and the ample case law cited above. In *Shron*, this Court found that the clickwrap borrower and loan agreements did not, "[i]n the context of the interface," provide adequate notice of an arbitration clause to the loan applicant. *Id.* at *5. The agreements were linked at the bottom of text-heavy loan information pages in a multi-step application process; in that context, the applicant "could reasonably have believed that such agreements reflected her consent to borrowing the loan amount applied for," but not that they affected her legal rights and remedies. *Id.*; *see* Case No. 19-cv-6718, Dkt. 14-1 (Sept. 5, 2019) (declaration with copies of loan application pages and clickwrap). Here, in sharp contrast, the User Agreement is hyperlinked clearly on a single-step and uncluttered sign-up page, just as in *Meyer* and *Feld*.

9

Here, the User Agreement provides that "[t]he arbitrator shall have exclusive authority to (1) determine the scope and enforceability of this Arbitration Agreement; and (2) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement . . . ." Nadler Decl. Ex. A at 9. This language is "clear and unmistakable" evidence of delegation. *Henry Schein*, 139 S. Ct. at 530 (quotation omitted); *see, e.g.*, *Bar-Ayal*, 2006 WL 2990032, at *7–8 (enforcing similar agreement).

Further, the User Agreement calls for arbitration to "be conducted in accordance with the then-prevailing JAMS Streamlined Arbitration Rules & Procedures." Nadler Decl. Ex. A at 9. Rule 8(b) of these rules provides that disputes of jurisdiction and arbitrability "shall be submitted to and ruled on by the Arbitrator."[5] For this additional and independent reason, the Court should delegate any questions of arbitrability that Hastings might raise to the arbitrator. The law in this Circuit is "settled" that when "the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Mackris v. O'Reilly*, 2019 WL 11000205, at *5 (S.D.N.Y. Mar. 6, 2019) (quotation omitted); *see also Nortek Inc. v. ITT LLC*, 2022 WL 656896, at *5 (S.D.N.Y. Mar. 4, 2022) (collecting relevant cases).

### IV. If the Court Decides to Reach Questions of Arbitrability, this Dispute Falls Within the Scope of the Arbitration Agreement.

Given the foregoing, this Court need not proceed any further to determine that the dispute here belongs in arbitration. But if this Court rules on issues of arbitrability, the FAA requires that the Court compel arbitration, "unless it may be said with positive assurance that the arbitration

---

[5] A dispute involving claims over $250,000, the User Agreement provides, are instead subject to "the then-prevailing JAMS Comprehensive Arbitration Rules and Procedures." Nadler Decl. Ex. B at 9. Rule 11(b) of the JAMS Comprehensive Rules contains the same provision relating to jurisdiction and arbitrability.

clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The FAA embodies a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H.*, 460 U.S. at 24). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*, 460 U.S. at 24–25.

The Arbitration Agreement here requires arbitration of "any dispute or claim relating in any way to: your access, use, or attempted access or use of the Site; any products sold or distributed through the Site or any aspect of your relationship with Nifty Gateway." Nadler Decl. Ex. B at 9. The Second Circuit has held that such language leaves "no doubt" that "any disputes with the Agreement's other signatory," *i.e.*, Nifty Gateway, must be arbitrated. *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.").

The Arbitration Agreement, moreover, is consistent with other clauses that courts have characterized as "broad" for purposes of the FAA. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) ("[A]ny controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement."); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (same). Courts are deferential to "broad" arbitration agreements; such clauses are "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract that contains the arbitration clause." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (quotation omitted). If the allegations underlying a claim "touch matters covered by the parties' contracts, then the claim must be arbitrated," legal labels aside. *Id.* (quotation omitted).

11

Plaintiff's claims "touch matters covered" by the User Agreement and are therefore arbitrable. *Id.*; *see also Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 485 (1989) (holding that claims brought under the Securities Act of 1933 are arbitrable). Plaintiff alleges that he purchased Nifties on Nifty Gateway's platform that were subject to the registration and disclosure requirements of federal securities laws. These allegations plainly relate to Plaintiff's use of Nifty Gateway's platform, products sold on the platform, and his relationship with Nifty Gateway. Even if there were any uncertainty as to whether Plaintiff's claims fall within the Arbitration Agreement, doubts or ambiguities must be resolved in favor of arbitration. *Moses H.*, 460 U.S. at 24–25; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19 (2019). Under the FAA, district courts have enforced arbitration of securities fraud claims such as those here, including claims brought under Section 12 of the Securities Act of 1933.[6] Plaintiff cannot shirk his agreement to arbitrate claims arising from his use of Nifty Gateway's services.

## V. The Arbitration Agreement Is Valid and Enforceable.

No grounds exist here to revoke the Arbitration Agreement. Under the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration

---

[6] *See, e.g.*, *Burstein v. AutoLotto, Inc.*, 2022 WL 1229291, at *7 (W.D. Tex. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 3337808 (W.D. Tex. May 31, 2022) (compelling arbitration of claims under Section 12 of the Securities Act of 1933 for alleged sale of unregistered digital securities); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 538 (S.D.N.Y. 2014) (compelling arbitration of securities fraud claims), *aff'd*, 639 F. App'x 664 (2d Cir. 2016); *DiNatale v. Shearson Lehman Hutton, Inc.*, 1990 WL 16171, at *4 (S.D.N.Y. Feb. 15, 1990) (same); *cf. Kumaran v. Vision Fin. Mkts., LLC*, 2022 WL 17540669, at *7 (S.D.N.Y. Dec. 6, 2022) (compelling arbitration of fraud claims under the Commodity Exchange Act).

agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quoting *Moses H.*, 460 U.S. at 24). As the party resisting arbitration, Plaintiff "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Khanna v. Am. Express Co.*, 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (quotation omitted).

Plaintiff has previously argued that his claim on behalf of a putative class is not subject to arbitration. *See* Pl.'s Response to Defs.' Pre-Motion Letter (Dkt. 15). Plaintiff's apparent position is that the Private Securities Litigation Reform Act of 1995 ("PSLRA") rescinded the FAA with respect to putative securities class actions. Plaintiff has not and cannot meet his burden.

His position is inconsistent with over two decades of case law. Courts have regularly compelled arbitration of a plaintiff's claims even when that plaintiff brings his or her claims on behalf of putative class members, as here, including claims subject to the PSLRA.[7] The cases that Plaintiff cited in his prior submissions relate to the issue of whether a defendant can compel arbitration of *putative class members*' claims before class certification.[8] They do not relate to whether a defendant can compel arbitration of *a named plaintiff's* claims. Defendants have not moved to compel the claims of any members of the putative class, only Plaintiff's.[9]

Indeed, there is no evidence Congress intended the PSLRA to override the FAA's liberal policy in favor of enforcing arbitration agreements. The "preference for enforcing arbitration

---

[7] *See, e.g.*, *Levitt v. Lipper Holdings, LLC*, 2006 WL 944450, at *1 (S.D.N.Y. Apr. 12, 2006) (arbitration compelled in putative securities class action subject to PSLRA); *Burstein*, 2022 WL 1229291, at *7 (same, involving identical claims as here under Section 12 of the Securities Act of 1933 for alleged sale of unregistered digital securities); *see also Meyer*, 868 F.3d at 81 (compelling arbitration of claims brought on behalf of a putative class); *Merryman v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 5477776, at *16 (S.D.N.Y. Sept. 29, 2016) (same); *Dill v. JPMorgan Chase Bank, N.A.*, 2020 WL 4345755, at *4 (S.D.N.Y. July 29, 2020) (same); *Bar-Ayal*, 2006 WL 2990032, at *17 (same).

[8] *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. Mar. 26, 2020); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019).

[9] Defendants reserve the right to seek to make any motions to compel arbitration at the appropriate time should other named plaintiffs join this matter or should a class ultimately be certified.

agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486–87 (2d Cir. 2013) (quoting *CompuCredit*, 565 U.S. at 98). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated." *Id.* The PSLRA simply contains no overriding congressional command. In fact, the PSLRA was passed as "a check *against* abusive litigation by private parties," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (emphasis added), not as a tool for plaintiffs to avoid the consequences of promising to arbitrate.

Where there is no contradiction between the FAA and federal law, as here, the FAA's policy favoring arbitration must be enforced. As the Supreme Court recently observed, "[i]n many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018). The Supreme Court further emphasized: "In fact, this Court has rejected *every* such effort to date (save one temporary exception since overruled), with statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act, the Credit Repair Organizations Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act." *Id.* Plaintiff's effort is no different.

Indeed, arbitration would not prevent Plaintiff from vindicating statutory rights. He will have a full opportunity to do so in the appropriate arbitral forum. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). More, putative class members do not need Plaintiff's protection—protection that Plaintiff cannot even provide. If Plaintiff must arbitrate his

claims, he will not be able to represent any putative class members. *See Morales v. Rochdale Vill., Inc.*, 2018 WL 4522084, at *14 (E.D.N.Y. Aug. 1, 2018) ("[Plaintiffs] cannot serve as adequate class representatives, since . . . their claims must be resolved in arbitration."). And if putative class members believe they have been injured, they are also free to assert claims in court or, if they have agreed to the Arbitration Agreement, in the proper arbitral forum.

**VI. This Action Should Be Stayed Pending Arbitration of Plaintiff's Claims.**

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay those claims. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Accordingly, this Court should also stay this action pending arbitration of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order (i) compelling Plaintiff to arbitrate his claims in accordance with the applicable arbitration agreement; and (ii) staying this action pending the outcome of arbitration.

| | |
|---|---|
| Dated: New York, NY<br>March 8, 2023 | Respectfully submitted,<br>**WALDEN MACHT & HARAN LLP**<br><br>By: /s/ *Sean Haran*<br>Sean Haran<br>Peter A. Devlin<br>250 Vesey Street, 27th Floor<br>New York, NY 10281<br>Tel: (212) 335-2030<br>sharan@wmhlaw.com<br>pdevlin@wmhlaw.com<br><br>*Attorneys for Defendants* |

15