UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN HASTINGS, Individually and on behalf of all others similarly situated,

        Plaintiff,

-against-

NIFTY GATEWAY, LLC and THE GEMINI TRUST COMPANY, LLC,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/19/2024_

22 Civ. 10517 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, John Hastings, brings this putative class action against Defendants, Nifty Gateway, LLC and the Gemini Trust Company, LLC (collectively, "Nifty"), alleging, *inter alia*, that Nifty violated federal securities law by selling non-fungible tokens ("NFTs") on its platform, Nifty Gateway. *See generally* Compl., ECF No. 1. Hastings asserts three causes of action for (1) the unregistered offer and sale of securities in violation of Sections 5 and 12(a)(1) of the Securities Act of 1933; (2) deceptive practices in violation of N.Y. Gen. Bus. Law § 349; and (3) unjust enrichment. *Id.* ¶¶ 70–94.

Hastings filed the class action complaint on December 13, 2022. *Id.* On March 8, 2023, Nifty moved to compel arbitration and stay this action pending the outcome of arbitration under the Federal Arbitration Act (the "FAA"). Mot., ECF No. 19; Def. Mem. at 1, ECF No. 20.

For the reasons stated below, Nifty's motion is GRANTED.

### BACKGROUND[1]

I.    <u>Plaintiff's Purchase of "Nifties"</u>

---

[1] In deciding a motion to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The Court may "consider all relevant, admissible evidence submitted by the parties." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

NFTs are a form of digital asset identifiable by a unique "digital certificate of ownership built on blockchain technology." Compl. ¶¶ 2, 19. NFTs can be bought, sold, and exchanged on a blockchain trading platform. *Id.* In 2018, Nifty launched such a platform, Nifty Gateway, as a marketplace to sell, trade, and own NFT digital art called "Nifties." *Id.* ¶ 22. Nifty claims that its business model is like that of a digital art gallery. *Id.* ¶ 20.

From February through April 2021, Hastings purchased Nifties on Nifty Gateway based on Nifty's promise that they would increase in monetary value. *Id.* ¶¶ 6, 7, 9, 10, 32. He alleges that Nifties are securities under the Supreme Court's *Howey* test "because they are crypto assets, alienable instantaneously, hyped up as investments, issued and maintained by Nifty Gateway and sold on the secondary marketplace that Nifty Gateway controls, promotes, supports and continues to make profits from." *Id.* ¶ 33. Hastings further claims that individuals invest in Nifties "because they have a reasonable expectation of profit, and [that] such profit is derived from [Nifty's] managerial efforts to promote and market their platform[] and thus maintain investor profits." *Id.* ¶ 32.

II. Nifty's Terms and Conditions

To use the Nifty Gateway platform, a user must first create an account through the website's sign-up page. Nadler Decl. ¶ 5, ECF No. 21. To create an account, the user must provide his name and email address, and create a username and password, on a page titled "Sign Up for Nifty Gateway." Sign-Up Page, Winer Decl. Ex. 1, ECF No. 28-1. "Just below these forms—and directly above the 'Sign Up' button that completes the account-creation process when clicked—there is a blue and underlined hyperlink to the 'Terms and

Conditions,' with text notifying the user that: 'By signing up, you agree to the Term[s] and Conditions and Privacy Policy.'" Def. Mem. at 3. By clicking the hyperlinked "Terms and Conditions," a Nifty Gateway user is taken to a new webpage containing the terms and conditions of the user agreement. *Id.*

Based on Nifty's internal records, "three email addresses associated with [] Hastings were used to create three separate Nifty Gateway accounts" on May 14, July 23, and August 6, 2020. Nadler Decl. ¶ 11. In 2020, when Hastings created his accounts on Nifty Gateway, the user agreement contained an arbitration agreement. *See* Terms of Use ¶ 17, Winer Decl. Ex. 2, ECF No. 28-2. Specifically, the terms of use "require[] [users] to arbitrate disputes with Nifty Gateway and limits the manner in which [users] can seek relief." *Id.* In addition to requiring users to arbitrate disputes concerning "access, use, or attempted access or use of [Nifty Gateway]; any products sold or distributed through [Nifty Gateway]; or any aspect of [users'] relationship with Nifty Gateway," the agreement stipulates that an

> arbitrator shall have exclusive authority to (1) determine the scope and enforceability of this Arbitration Agreement; and (2) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including but not limited to any claim that all or part of this Arbitration Agreement is void or voidable[.]

*Id.* (the "Delegation Clause"). Nifty claims that by "creat[ing] three different accounts through" Nifty Gateway's sign-up page, "Hastings accepted the Terms of Use on three separate occasions." Nadler Decl. ¶ 11.

## DISCUSSION

I. <u>Legal Standard</u>

The FAA provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

Under the FAA, parties can petition a district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The district court must stay proceedings once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *McMahan Sec. Co. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994)); *see* 9 U.S.C. § 3. The Court is required to "direct[] the parties to proceed to arbitration in accordance with the terms of the [arbitration] agreement[,]" provided that there is no issue regarding its formation or validity. 9 U.S.C. § 4; *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 (E.D.N.Y. 2016).

To determine whether parties have agreed to arbitrate a dispute, "courts consider two questions: (1) whether a valid agreement to arbitrate under the contract in question exists and (2) whether the particular dispute in question falls within the scope of that arbitration agreement." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d. 81, 99 (S.D.N.Y. 2015). Parties, however, by way of a delegation clause, can agree "to arbitrate [these] threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). An agreement to delegate threshold issues to an arbitrator "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id.* at 70. But, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up); *accord NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1031 (2d Cir.

4

2014) ("The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

Where a party specifically challenges a delegation clause, moreover, the district court—not the arbitrator—must adjudicate the challenge. *See Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 604 (S.D.N.Y. 2020) (citing *Rent-a-Center*, 561 U.S. at 72). Conversely, absent a specific challenge to a valid delegation provision, the parties' dispute must be delegated to an arbitrator. *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 195 (E.D.N.Y. 2019); *see also Oldacre v. ECP-PF CT Operations*, No. 22 Civ. 577, 2023 WL 3451086, at *3–4 (W.D.N.Y. May 15, 2023) ("Because Plaintiff does not specifically challenge the delegation provision, these issues of arbitrability must be resolved by the arbitrator, not the Court."); *Bolden v. DG TRC Mgmt. Co., LLC*, No. 19 Civ. 3425, 2019 WL 2119622, at *6 (S.D.N.Y. May 15, 2019) (noting that when a delegation provision exists, "a court may not intervene unless a party challenges the delegation provision specifically" (cleaned up)).

That said, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)).

II. Analysis

A. Contract Formation

Before reaching whether Hastings and Nifty delegated to an arbitrator the question of arbitrability, the Court must determine whether a valid contract was formed. *Doctor's Assocs.*, 934 F.3d at 251. The party compelling arbitration "bears an initial burden of demonstrating that

an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). "This burden may be satisfied by the actual production of the arbitration agreement." *Roller v. Centronics Corp.*, No. 87 Civ. 5715, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989).

Hastings argues that Nifty has "failed to make the required prima facie showing of an agreement binding the parties to arbitration." Pl. Opp. at 14, ECF No. 26. A declaration from Alex Nadler, Nifty's trust and safety manager, accompanied the motion to compel arbitration. Nadler Decl. Attached as exhibit A to the declaration is a "true and correct copy of the [Nifty Gateway] sign-up page that was in effect in March 2021." *Id.* ¶ 6. Attached as exhibit B is a "copy of Nifty Gateway's Terms of Use in effect on April 30, 2021." *Id.* ¶ 9. Nadler represents that both exhibits are "substantially similar" to the sign-up page and terms of use that were in effect in 2020 when Hastings created his Nifty Gateway accounts. *Id.* ¶¶ 6, 9. Hastings, however, contends that the agreement attached as exhibit A "explicitly [was] not in effect at the time of [his] account creation" and that Nifty has "failed to properly authenticate either document." Pl. Opp. at 16.

With its reply brief, Nifty provided a declaration from Eric Winer, Nifty's chief technology officer. Winer Decl. ¶ 1, ECF No. 28. Winer reviewed Nifty Gateway's source code dating back to February 2020, which allowed him to "determine what users of the [w]ebsite saw and were able to do when [they] visited and interacted with the [w]ebsite" from "April to September 2020," when Hastings created his accounts. *Id.* ¶ 5. Winer attests that exhibit A to the Nadler declaration, which is attached to Winer's declaration as exhibit 1, is a "substantially identical sign-up page to what a user would have seen" when Hastings created his accounts. *Id.*

Attached as exhibit 2 to the Winer declaration is a version of Nifty's terms of use from the same time period, which Winer similarly authenticated. *Id.* ¶ 6.

"[W]hen presented with arbitration agreements in contracts formed online between companies and their customers . . . courts routinely rely on affidavits and declarations . . . describing and depicting how the affected individual manifested assent to the company's arbitration provision." *Mancilla v. ABM Indus., Inc.*, No. 20 Civ. 1330, 2020 WL 4432122, at *6 (S.D.N.Y. July 29, 2020); *see Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–35 (S.D.N.Y. 2012) (relying on declarations and screenshots in evaluating the sign-up process); *Nicosia v. Amazon.com, Inc.*, No. 14 Civ. 4513, 2017 WL 10111078, at *5 n.14 (E.D.N.Y. Aug. 18, 2017) (collecting cases), *R. & R. adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019). Based on the declarations and exhibits provided, the Court finds that Nifty has satisfied its burden to produce proof of the arbitration agreement.

The next question is whether that agreement constitutes a binding contract between the parties. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Doctor's Assocs.*, 934 F.3d at 251. Under New York law, a valid contract requires an "offer, acceptance, consideration, mutual assent and [an] intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions." *Schwartz v. Sterling Ent. Enters.*, No. 21 Civ. 1084, 2021 WL 4321106, at *3 (S.D.N.Y. Sept. 23, 2021) (citation omitted).[2] In *Meyer*, the Second Circuit

---

[2] Hastings contends that Texas law may also apply to the dispute because he is domiciled in Texas and "each of his interactions with Nifty Gateway . . . occurred in Texas." Pl. Opp. at 21. The Court need not engage in a choice-of-law analysis because, as Hastings acknowledges, there is no conflict between New York and Texas law on the question of contract formation. *Id.* at 21 n.21; *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (holding that where states "apply substantially similar rules for determining whether the parties have mutually assented to a contract term[,] . . . . [w]hich state's law applies is [] without significance").

outlined the standard for determining whether parties entered into a web-based contract like the one presented to Hastings when creating his Nifty Gateway accounts. 868 F.3d at 75–80. On a motion to compel arbitration, an agreement to arbitrate exists "where [(1)] the notice of the arbitration provision was reasonably conspicuous and [(2)] manifestation of assent [is] unambiguous as a matter of law." *Id.* at 76.

Like the registration page in *Meyer*, Nifty Gateway's sign-up page contains reasonably conspicuous notice of the arbitration agreement. The account sign-up webpage states that "[b]y signing up, you agree to the Terms and Conditions and Privacy Policy." Sign-Up Page. The title "Terms and Conditions" is directly above the "sign up" button, in blue, underlined, and links to Nifty's terms of use. *See id*. Paragraph 17 of the terms of use is titled "Disputes" in a large font and begins by instructing users to "[p]lease read the following agreement to arbitrate . . . in its entirety." Terms of Use ¶ 17. Because "a reasonably prudent [] user would have constructive notice of [Nifty's] terms," the Court finds that Hastings had inquiry notice. *Meyer*, 868 F.3d at 79. Further, the contract formation process via Nifty Gateway's sign-up page mirrors that in *Meyer*, which the Second Circuit deemed valid. *Id.* ("Although the contract terms are lengthy and must be reached by a hyperlink, the instructions are clear and reasonably conspicuous. Once a user clicks through to the Terms of Service, the section heading ('Dispute Resolution') and the sentence waiving the user's right to a jury trial on relevant claims are both bolded.").

Also as in *Meyer*, although Hastings's assent was not express, it was unambiguous. *Id.*; *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012) ("[A]cceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound."). "[A] reasonable user would know that by clicking the [sign-up]

8

button, he was agreeing to the terms and conditions accessible via the hyperlink." *Meyer*, 868 F.3d at 79–80. Further, given "the spatial and temporal coupling" of the terms and conditions hyperlink and the sign-up button, Hastings indicated that he was "employing [Nifty's] services subject to additional terms and conditions that may one day affect him." *Id.* at 79. Accordingly, Hastings unambiguously assented when creating his three Nifty Gateway accounts.

      B.  The Delegation Clause

Having concluded that Hastings and Nifty entered into a contract to arbitrate, the Court must next determine whether they "clear[ly] and unmistakabl[y]" agreed to delegate to an arbitrator the issue of arbitrability. *First Options*, 514 U.S. at 944. Clear and unmistakable evidence "is found through [b]road language expressing an intention to arbitrate all aspects of all disputes, or a delegation provision." *Morehouse v. PayPal Inc.*, No. 21 Civ. 4012, 2022 WL 912966, at *7 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks and citation omitted).

Nifty's Delegation Clause provides that an "arbitrator shall have exclusive authority to (1) determine the scope and enforceability of this Arbitration Agreement; and (2) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." Terms of Use ¶ 17. The Court concludes, therefore, that the "plain language of the Delegation Clause shows that [Hastings and Nifty] clearly and unmistakably delegated questions of arbitrability to the arbitrator." *Schwartz*, 2021 WL 4321106, at *6; *see Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 371 F. Supp. 2d 571, 575–76 (S.D.N.Y. 2005) (applying New York law and finding that contractual language delegating to an arbitrator all disputes involving "meaning, construction, validity and/or enforceability" of the parties' agreement "clearly and unmistakably evidences the parties' intent to submit questions of arbitrability to an arbitrator").

Hastings does specifically challenge the Delegation Clause, Pl. Opp. at 21–22, which permits the Court to "intervene." *Bolden*, 2019 WL 2119622, at *6; *see also Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017) ("Where a court finds clear and unmistakable evidence that contractual parties agreed to arbitrate arbitrability, a party may nonetheless challenge the delegation of arbitrability itself as invalid for unconscionability." (citation omitted)). But, Hastings only argues that the Clause is not a "clear and unmistakable" delegation. Pl. Opp. at 21–22. Here, Hastings's specific challenge to the Delegation Clause fails because the Court has already concluded that the Clause is clear and unmistakable.

       C.       Private Securities Litigation Reform Act Litigation

Lastly, Hastings argues that Nifty's motion to compel arbitration should be denied based on Congress's intent, in enacting the Private Securities Litigation Reform Act (the "PSLRA"), to guarantee investors "the ability to litigate securities claims on a classwide basis in federal court." *Id.* at 32.

The FAA's "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013) (citation omitted). The Supreme Court has "rejected efforts to conjure conflicts between the [FAA] and other federal statutes." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018). "[E]ven a statute's express provision for collective legal actions does not necessarily mean that it precludes individual attempts at conciliation through arbitration." *Id.* (quotation omitted). The "absence of any specific statutory discussion of arbitration . . . is an important and telling clue that Congress has not displaced the [FAA]." *Id.* As the PSLRA does not mention arbitration, the Court declines to intuit a statutory preemption—over the parties' agreement—where one does

not explicitly exist. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 462, 478 (S.D.N.Y. 2010) (noting that because the PSLRA does not "contemplate arbitrations[,] . . . the Court is not persuaded that Plaintiffs will ultimately prevail in showing that [the] PSLRA allows the Court to micro-manage arbitration proceedings"); *see Dropp v. Diamond Resorts Int'l, Inc.*, No. 18 Civ. 247, 2019 WL 332399, at *3 (D. Nev. Jan. 25, 2019) ("Nothing about the class action procedures of the PSLRA suggests an aggrieved person could not fulfill the Securities Act's enforcement purposes through individualized arbitration, just as he or she could through an individualized lawsuit. Had Congress intended to preclude individualized arbitration in securities cases, it could have said so."). The Court, therefore, concludes that the PSLRA does not require judicial intervention.

## CONCLUSION

For the reasons stated above, Nifty's motion to compel is GRANTED. This action is STAYED pending arbitration of Hastings's claim. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). The parties are directed to file a status update within one week of the conclusion of arbitration. The Clerk of Court is directed to terminate the motion at ECF No. 19 and hold in abeyance the motion at ECF No. 24.

SO ORDERED.

Dated: March 19, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge